J-A31018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LORI GRAY, DERIVATIVELY ON BEHALF OF FIRST NATIONAL COMMUNITY BANCORP, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LOUIS A. DENAPLES AND FIRST NATIONAL COMMUNITY BANCORP, INC. | |
| ***** | |
| FARUQI AND FARUQI | |
| v. | |
| JOSEPH R. SOLFANELLI | |
| Appellant | No. 2198 MDA 2014 |

Appeal from the Order Entered November 13, 2014
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 12 CV 3228

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 04, 2016**

Joseph Solfanelli ("Solfanelli") appeals from the order entered in the Court of Common Pleas of Lackawanna County, which sustained the objection of Faruqi & Faruqi, LLP ("Faruqi") to the attorneys' fees portion of the settlement of this matter and awarded Faruqi 35% of the attorneys' fees

---

[*] Retired Senior Judge assigned to the Superior Court.

pursuant to an agreement between Solfanelli and Faruqi. After careful review, we affirm.

The trial court summarized the relevant facts and procedural history as follows:

Dr. Gray (hereinafter referred to as "Gray") was approached by Solfanelli regarding the potential for filing [a shareholder derivative] suit. Gray signed a retention agreement with the firm of O'Malley and Langan on December 15, 2011,[1] authorizing them *inter alia*, to "employ and/or work with other attorneys or law firms to prosecute the Action."

Although the testimony of the parties varies greatly concerning their understanding of the contributions each brought to the table, it is undisputed that the case initially proceeded with the combined efforts of Solfanelli (and/or O'Malley) and Faruqi. For various reasons, including both personal and professional differences as identified in the testimony presented before the Court, the relationship between Solfanelli and Faruqi deteriorated. Within the same timeframe, [Richard] Greenfield came back to the case as Plaintiff's counsel. Ultimately, Solfanelli "fired" Faruqi, on/around June 2013, telling Faruqi to take an "inactive role." On August 8, 2013, Solfanelli memorialized a new retention agreement with Gray, confirming Solfanelli's position as lead counsel with the authority to ". . . terminate existing counsel, [and] retain new counsel as deemed necessary . . . ." In addition, Gray formally terminated Faruqi's representation of her interests on January 19, 2014 via letter to [Michael] Hynes.

Based upon his termination of Faruqi, Solfanelli pledged to compensate Faruqi upon his determination of what they "brought to the table" regardless of the fee agreement. The fee agreement at issue was memorialized in a July 27, 2012 email exchange between [Jacob] Goldberg (on behalf of Faruqi) and both O'Malley and Solfanelli individually concerning the attorneys' fees to be paid to Faruqi in this case. The email exchange provides as follows:

. . . you agree that Faruqi & Faruqi will receive 35% of the gross fees that the court awards in the FNCB cases,

relating to all claims and causes of action . . . This agreement supersedes and supplants any other agreement between you and Faruqi & Faruqi, LLP and cannot be altered for any reason except by agreement in writing of the parties hereto . . .

O'Malley replied with his individual assent to the email; Solfanelli replied individually and on behalf of O'Malley and Greenfield with his assent. Solfanelli does not dispute the validity of the email exchange as a (then) valid contract.

[1] The record reveals Solfanelli was "of counsel" at O'Malley and Langan on this case, and otherwise not affiliated with the firm.

Trial Court Opinion, 11/5/14, at 2-4 (citations omitted).

Solfanelli timely filed a notice of appeal and raises the following issue for review:

Whether a law firm serving as co-counsel for plaintiff that is dismissed during the midst of a shareholder's derivative suit that is nowhere near a favorable resolution remains entitled to recover its contractually specified share of attorneys' fees from the total fee available to compensate all counsel at the conclusion of the suit or whether the dismissed law firm's recovery instead should be limited to the amount reasonably due for work actually performed under a quantum meruit theory?

Brief of Appellant, at 5.

The trial court's determination in this case is based on its interpretation of the written fee agreement memorialized in Goldberg's July 27, 2012 email. Accordingly, our standard and scope of review is as follows:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Ruby v. Abington Mem. Hosp.***, 50 A.3d 128, 132 (Pa. Super. 2012).

The relationship between the parties began when Solfanelli approached Faruqi to assist with Gray's derivative action. The parties initially agreed to split all fees evenly, but later agreed in writing that Faruqi's share would be decreased due to changed circumstances. This agreement clearly entitled Faruqi to 35% of the gross fees obtained from all claims and causes of action relating to the derivative suit. The agreement states that its terms could only be altered "by agreement in writing" of the parties. Solfanelli has submitted letters that he and his client Gray transmitted to Faruqi, during the period before this matter was settled, purporting to dismiss Faruqi from the case. The trial court found that none of these communications nullified the July 27, 2012 agreement between the parties, nor altered its terms in any way.

In Pennsylvania, it is well settled that the doctrine of quantum meruit does not apply when a written agreement exists between the parties. ***Lackner v. Glosser***, 892 A.2d 21, 34 (Pa. Super. 2006). This Court has previously held that quantum meruit does not apply to written agreements between attorneys regarding attorneys' fees in particular. ***Ruby***, ***supra*** at 136. Here, the July 27, 2012 email delineating that Faruqi was to receive 35% of all attorneys' fees resulting from the derivative suit represents a valid written agreement. Moreover, because the July 27, 2012 contract is one between attorneys and does not directly involve the client, it is inconsequential that Solfanelli attempted to "fire" Faruqi from the case. ***See***

Trial Court Opinion, 11/5/2014, at 5.  Indeed, Pennsylvania law holds that the firing of an attorney or law firm will not invalidate a contract between attorneys for the division of fees in a case.  **See Ruby**, **supra** at 134.  Thus, the agreement regarding attorneys' fees is valid and Faruqi is entitled to 35% of the fees awarded in this matter.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/4/2016</u>